# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

GARY M. PIERCE              :
                                     :
                                     :
       v.                          :     Criminal No. CCB-11-0451
                                     :     (Civil No. CCB-13-744)
                                     :
UNITED STATES OF AMERICA    :
                                     :

## MEMORANDUM

Gary M. Pierce is serving a 72-month sentence in the custody of the United States Bureau of Prisons after pleading guilty to conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. He now attacks that sentence via a motion brought under 28 U.S.C. § 2255, arguing that his counsel was constitutionally inadequate. Specifically, Pierce contends that his lawyer furnished ineffective assistance in failing to contest both the inclusion of a sentencing enhancement, U.S.S.G. § 2B1.1(b)(2)(A), in his plea agreement and its subsequent application at sentencing, as well as in failing to advise Pierce sufficiently as to the scope of his appellate rights after sentencing.[1] For the reasons explained below, no hearing is necessary to the resolution of that motion, *see* 28 U.S.C. § 2255(b), which will be denied.

## BACKGROUND

Pursuant to a plea agreement, Pierce pleaded guilty to conspiring to commit wire fraud in violation of 18 U.S.C. § 1349. (*See* Plea Agreement 1–2, ECF No. 6.) The court accepted Pierce's plea. (*See* ECF No. 4.)

---

[1] Pierce's initial motion also argued that his counsel's failure to advise him of the government's alleged breach of the plea agreement fell short of the constitutional standard. (*See* Mot. 6, ECF No. 51.) But his memorandum in support of that motion, filed less than a month later, expressly abandoned that argument. (*See* Mem. 8, ECF No. 53.) Accordingly, it will not be addressed here.

In that agreement, Pierce acknowledged that he owned and managed a real estate title agency that provided "settlement services to clients who were either buying homes or refinancing existing mortgages." (Plea Agreement 10.) When a consumer entered such a transaction, the lender would wire money to Pierce's settlement agency for the purpose of paying off the existing mortgage on the property. (*See* Plea Agreement 10.) Beginning in 2007, Pierce and a co-conspirator began diverting those funds to their own accounts, either by successfully applying for mortgages on property they did not own or by diverting the proceeds of other peoples' mortgages. (*See* Plea Agreement 11.) Because existing mortgages on these latter properties were never paid off, clear title could not pass to the new borrower. (*See* Plea Agreement 12.) Once the scheme was discovered, therefore, three title insurers that had guaranteed the quality of title—specifically, First American Title Insurance, Security Title Insurance of Baltimore, and Chicago Title Insurance Company—were obligated to liquidate these unpaid debts to create clear title. (*See* Plea Agreement 12.) Pierce and his co-conspirator ultimately diverted nearly five million dollars in funds that lenders had entrusted to them to pay off existing mortgages on 17 properties. (*See* Plea Agreement 12–13.)

Under his plea agreement, Pierce:

> waive[d] all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), <u>except</u> . . . [that Pierce] reserves the right to appeal any term of imprisonment to the extent that it exceeds 78 months' imprisonment . . .

(Plea Agreement 7.)

During Pierce's sentencing hearing, the government presented the testimony of three

victims.  A representative of Security Title stated that the insurer sustained losses amounting to

$841,341.92 as a consequence of Pierce's fraud.  (*See* Tr. 23.)  An individual homeowner

testified to the substantial stress induced by learning of the unpaid debt on her home, which

remained unsettled at the time of the sentencing hearing.  (*See* Tr. 31.)  A second homeowner

offered similar testimony, specifying that he spent months seeking to avoid foreclosure of his

home and rectifying the adverse events recorded in his credit history.  (*See* Tr. 35–37.)  His

problems, too, remained unresolved at the time of the sentencing hearing.  (*See* Tr. 37.)  No other

victims testified at the hearing.  And the presentence report listed as victims only the three title

insurance companies.

At sentencing, the court determined that the United States Sentencing Guidelines advised

a term of imprisonment of between 87 and 108 months.  (*See* Sentencing Transcript 60, ECF No.

41; Statement of Reasons 1, ECF No. 39.)  The court premised that conclusion on calculating an

offense level of 29 and a criminal history category of I.  (*See id.*)  Pierce's base offense level was

7.  *See* U.S.S.G. §§ 2X1.1, 2B1.1(a)(1).  The magnitude of the loss caused by Pierce's conduct

increased the offense level by 18 points.  *See* U.S.S.G. § 2B1.1(b)(1)(J).  Pierce's abuse of the

trust placed in him by his clients increased the offense level by another 2 points.  *See* U.S.S.G.

§3B1.3.  Over Pierce's objection, the court applied an additional 2-level increase for Pierce's use

of sophisticated means to avoid the detection of his scheme.  *See* U.S.S.G. § 2B1.1(b)(10)(C).

And, without objection from either party, the court applied a 2-level increase because Pierce's

offense involved 10 or more victims.  *See* U.S.S.G. § 2B1.1(b)(2)(A).  Over the government's

objection, the court decreased the offense level by two points in recognition of Pierce's

acceptance of responsibility.  *See* U.S.S.G. § 3E1.1(a).  The government declined to move for an

additional one-level reduction. *See* U.S.S.G. § 3E1.1(b).

Notwithstanding the sentence advised by the guidelines, the court imposed a 72-month prison term. (*See* Tr. 82; Judgment 1, ECF No. 38.) After consideration of the factors enumerated in 18 U.S.C. § 3553(a), the court concluded that such a sentence "is sufficient without being greater than necessary . . . . to recognize the seriousness of this offense and deter others, without unduly punishing Mr. Pierce." (Tr. 82.) Even if application of the two-level enhancement Pierce contests in this motion was erroneous, it would not change this court's determination that a 72-month sentence was reasonable under 18 U.S.C. § 3553(a).

At the conclusion of the sentencing hearing, the court stated that Pierce could consult with his attorney about the possibility of an appeal, although the court indicated that it was unlikely that Pierce had "anything . . . to appeal from." (Tr. 86.) Pierce never filed a notice of appeal. Instead, he filed this motion, after the time for an appeal had run.

## ANALYSIS

The familiar standard of *Strickland v. Washington*, 466 U.S. 668 (1984), governs Pierce's claims that defense counsel rendered ineffective assistance in violation of the Sixth Amendment, both during plea negotiations and sentencing. *See, e.g.*, *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (plea negotiations); *Glover v. United States*, 531 U.S. 198, 200 (2001) (sentencing). "[T]o establish ineffective assistance, [Pierce] must show '(1) that his attorney's performance fell below an objective standard of reasonableness and (2) that he experienced prejudice as a result, meaning that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Dyess*, 730 F.3d 354, 361 (4th Cir. 2013) (quoting *United States v. Fugit*, 703 F.3d 248, 259 (4th Cir. 2012)).

4

"[I]n evaluating counsel's performance, [courts] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Galloway*, 749 F.3d 238, 241 (4th Cir. 2014) (quoting *Sexton v. French*, 163 F.3d 874, 882 (4th Cir. 1998)).  That presumption accords to defense counsel "considerable latitude with respect to proper strategy." *Tice v. Johnson*, 647 F.3d 87, 102 (4th Cir. 2011).

As noted, Pierce argues that his lawyer failed him three times over: first, in failing to object to the inclusion in his plea agreement of a two-point sentencing enhancement under U.S.S.G. § 2B1.1(b)(2); second, in failing to object to the application of that enhancement during sentencing; and, third, in failing to counsel Pierce adequately as to his appellate rights after sentencing.  In none of these instances, however, did Pierce's attorney perform unreasonably.  Accordingly, Pierce's motion will be denied.

## I. Sentencing Enhancement U.S.S.G. § 2B1.1(b)(2)

Pierce asserts that his attorney wrongfully acquiesced to the application of an enhancement under U.S.S.G. § 2B1.1(b)(2)(A)(i), first in his plea agreement and later at sentencing.  That provision authorizes a two-level increase for fraud offenses that "involved 10 or more victims."  U.S.S.G. § 2B1.1(b)(2)(A)(i).  In his plea agreement, Pierce conceded the applicability of that enhancement, (*see* Plea Agreement 7), and the court ultimately applied it at sentencing, (*see* Tr. 3, 60).  Pierce now asserts that, under the guidelines' definition of "victim," he defrauded only three victims—namely, the three title insurance companies that reimbursed underwriters for losses sustained as a result of Pierce's conduct.  The enhancement thus did not apply, he continues, and his attorney's failure to recognize and argue its inapplicability constituted deficient performance.  Given the uncertain meaning of "victim," however, counsel's

failure to advance the argument Pierce now asserts was not objectively unreasonable under the *Strickland* standard.

Commentary accompanying the guidelines defines "victim" as either "(A) any person who sustained any part of the *actual loss* . . . ; or (b) any individual who sustained bodily injury as a result of the offense . . . ." U.S.S.G. § 2B1.1 cmt. n.1 (emphasis added).[2] "Actual loss," in turn, "means the reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1 cmt.3(A)(i). And "pecuniary harm" refers to "harm that is monetary or that otherwise is readily measurable in money. Accordingly, pecuniary harm does not include emotional distress, harm to reputation, or other non-economic harm." U.S.S.G. § 2B1.1 cmt.3(A)(iii). Similarly, "loss" excludes "[i]nterest of any kind, finance charges, late fees, penalties, amounts based on an agreed-upon rate of return, or other similar costs." U.S.S.G. § 2B1.1 cmt. n.3(D)(i).

Authority is split on the proper interpretation of this enhancement and the commentary that accompanies it, as the Fourth Circuit has recognized. *See United States v. Otuya*, 720 F.3d 183, 191–92 (4th Cir. 2013). Pierce invokes a line of cases from the Third, Fifth, Sixth, and Eighth Circuits, holding that a "victim," for purposes of U.S.S.G. § 2b1.1, is an entity that bears the ultimate pecuniary harm of fraudulent conduct, an interpretation that excludes entities reimbursed for losses guaranteed by insurers or others. *See United States v. Kennedy*, 554 F.3d 415, 419 (3d Cir. 2009); *United States v. Conner*, 537 F.3d 480, 489 (5th Cir. 2008); *United States v. Icaza*, 492 F.3d 967, 970 (8th Cir. 2007); *United States v. Yagar*, 404 F.3d 967, 971 (6th

---

[2] "[C]ommentary to the Sentencing Guidelines is authoritative and binding, unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, the Guideline itself." *United States v. Montes-Flores*, 736 F.3d 357, 364 n.7 (4th Cir. 2013) (alteration in original) (quoting *United States v. Peterson*, 629 F.3d 432, 435 (4th Cir. 2011)).

Cir. 2005). The First, Seventh, and Eleventh Circuits, by contrast, hold that entities suffering temporary losses qualify as "victims" under the enhancement, even if they are subsequently reimbursed. *See United States v. Panice*, 598 F.3d 426, 433 (7th Cir. 2010); *United States v. Stepanian*, 570 F.3d 51, 55–56 (1st Cir. 2009); *United States v. Lee*, 427 F.3d 881, 894–95 (11th Cir. 2005). The Second and Ninth Circuits have adopted an intermediate position, holding that entities reimbursed for their losses may constitute victims if they temporarily suffered adverse effects measurable in money. *See United States v. Pham*, 545 F.3d 712, 719–20 (9th Cir. 2008); *United States v. Abiodun*, 536 F.3d 162, 168–69 (2d Cir. 2008).[3] The Fourth Circuit, however, recently refused to weigh in on the debate, reserving the issue for another day. *See Otuya*, 720 F.3d at 191–92.

Pierce's attorney was not constitutionally deficient for failing to assert an argument that several circuit courts reject and that neither the Fourth Circuit nor the Supreme Court have endorsed. *See, e.g.*, *Ragland v. United States*, 756 F.3d 597, 601 (8th Cir. 2014). "[T]he Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim." *Engle v. Isaac*, 456 U.S. 107, 134 (1982). "A failure to raise arguments that require the resolution of unsettled legal questions generally does not render a lawyer's services 'outside the wide range of professionally competent assistance' sufficient to satisfy the Sixth Amendment." *New v. United States*, 652 F.3d 949, 952 (8th Cir. 2011) (quoting *Strickland*, 466 U.S. at 690); *accord Smith v. Singletary*, 170 F.3d 1051, 1054 (11th Cir. 1999). For this reason, "the case law

---

[3] In so holding, the Second and Ninth Circuits elaborated on a dictum in *Yagar*, which observed that "there may be situations in which a person could be considered a 'victim' under the Guidelines even though he or she is ultimately reimbursed," so long as those individuals suffered an "adverse effect as a practical matter." *Yagar*, 404 F.3d at 971. *See also Pham*, 545 F.3d at 719; *Abiodun*, 536 F.3d at 168. The Third Circuit, in turn, invoked this dictum to deny the existence of a circuit split. *See Kennedy*, 554 F.3d at 421. The First and Seventh Circuits, however, have outright rejected *Yagar*, *see Panice*, 598 F.3d at 433; *Stepanian*, 570 F.3d at 56, and the Fourth Circuit has identified the conflict as a circuit split, *see Otuya*, 720 F.3d at 191–92.

is clear that an attorney's assistance is not rendered ineffective because he failed to anticipate a *new rule of law*." *Kornahrens v. Evatt*, 66 F.3d 1350, 1360 (4th Cir. 1995) (emphasis added). "If counsel's failure to anticipate a change in the law will not establish that counsel performed below professional standards, *then counsel's failure to anticipate a rule of law that has yet to be articulated by the governing courts surely cannot render counsel's performance professionally unreasonable*." *New*, 652 F.3d at 953 (emphasis in original) (quoting *Fields v. United States*, 201 F.3d 1025, 1028 (8th Cir. 2000)).  Stated differently, "an attorney is not constitutionally deficient for failing to research the law of other circuits." *Gregory v. United States*, 109 F. Supp. 2d 441, 458 (E.D. Va. 2000).  *Honeycutt v. Mahoney*, for example, refused to hold deficient an attorney's failure to assert an argument premised on a single out-of-circuit decision and not yet considered by either the Fourth Circuit or the Supreme Court.  698 F.2d 213, 217 (4th Cir. 1983).

A greater number of courts have endorsed the argument Pierce faults his attorney for omitting, than the lone circuit decision discussed in *Honeycutt*.  Unlike *Honeycutt*, however, several have also considered it and expressly rejected it.  Pierce's counsel was thus not deficient in failing to advance the argument he now asserts.  *See United States v. Mellor*, Civ. No. 7:10-Cv-80225, 2010 WL 3585892, at *9–10 (W.D. Va. Sept. 9, 2010) (holding not deficient counsel's failure to argue that reimbursed individuals were not victims under U.S.S.G. §2B1.1); *McCalla v. United States*, Civ. No. RWT-09-2826, 2010 WL 3385458, at *3 (D. Md. Aug. 26, 2010) (same).[4]

## II. Appellate Consultation

Pierce next argues that his attorney's failure to consult him about the possibility of an appeal denied him the effective assistance of counsel.  Pierce's own affidavit, however,

---

[4] Unpublished opinions are cited for the soundness of their reasoning, not for any precedential value.

contradicts the premise of his argument, as explained below.

"[T]he decision to appeal rests with the defendant . . . ." *Roe v. Flores-Ortega*, 528 U.S. 470, 479 (2000).  "An attorney renders constitutionally ineffective assistance of counsel if he fails to follow his client's unequivocal instruction to file a timely notice of appeal even though the defendant may have waived his right to challenge his conviction and sentence in the plea agreement." *United States v. Poindexter*, 492 F.3d 263, 265 (4th Cir. 2007).  By contrast, "where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken," the lawyer's constitutional adequacy turns on "whether counsel in fact consulted with the defendant about an appeal." *Flores-Ortega*, 528 U.S. at 478.  In such circumstances, "consultation" means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.*

The Sixth Amendment requires consultation where "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480.  A lawyer's derogation of this duty to consult constitutes deficient performance under the *Strickland* standard.  A defendant proves prejudice under that standard by "demonstrat[ing] that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484.  But so long as counsel *does* consult her client, she "'performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.'  That is, if an attorney satisfies the obligation to 'consult,' then the onus is on the defendant to expressly instruct the attorney to file a notice of appeal." *United States v. Fabian*,

798 F. Supp. 2d 647, 678 (D. Md. 2011) (quoting *Flores-Ortega*, 528 U.S. at 478).

Here, the court may assume, without deciding, that Pierce demonstrated sufficient interest in the possibility of appealing to trigger his lawyer's duty to consult. That duty often arises "because the defendant said something to his counsel indicating that he had an interest in appealing." *United States v. Cooper*, 617 F.3d 307, 313 (4th Cir. 2010) (collecting cases). *Hudson v. Hunt*, for example, held that a defendant's "inquir[y] about his right to appeal" required his lawyer to consult him on the matter. 235 F.3d 892, 896 (4th Cir. 2000). This case appears no different. Pierce "inquired with his attorney regarding his appeal rights." (Pierce Aff., ECF No. 54-1.) Thus even if Pierce lacked any basis for appeal, the court assumes that his attorney was constitutionally obligated to discuss the matter with him.

Pierce's counsel honored that obligation, as Pierce's own affidavit indicates. There, Pierce explains that his attorney "responded to [Pierce's]" inquiry about an appeal "and recited the Presiding Judge's comments." (Pierce Aff. 2.) Those comments were as follows:

> THE COURT:          Mr. Pierce, in light of th[e] sentence, and in light of the
>                     plea agreement, I don't believe there is anything you
>                     probably have a right to appeal from. But if you think there
>                     is, you can discuss that with [your lawyer]. Any appeal
>                     would need to be noted within 14 days. Do you understand
>                     that?
> THE DEFENDANT:      Yes.[5]

(Tr. 85–86, ECF No. 41.) On Pierce's account, then, his lawyer responded to his query

---

[5] With this statement, Pierce contends, "the Court may have overstepped its authority by : (1) providing legal advice, and ; (2) by performing the role of an appellate panel." (Mem. 5.) This remark, he continues, "is the elephant in the room." (Reply 7.) He faults his attorney for failing to challenge that statement or seeking clarification of it. But those alleged failures do not amount to deficient performance. The court's statement merely notified Pierce that he would need to take an appeal within 14 days. Had the court failed to include qualifying language concerning Pierce's plea agreement, it might have risked nullifying his deal with the government. *Cf. United States v. Manigan*, 592 F.3d 621, 628 (4th Cir. 2010) (refusing to enforce an appellate waiver in a plea agreement where the court incorrectly informed the defendant during the Rule 11 colloquy that he could appeal the sentence).

by adopting as his own the court's statement that Pierce lacked any basis for appeal.

Such a statement, under the circumstances of this case, qualifies as a consultation.  In

evaluating the constitutional adequacy of counsel's representation, "[n]o particular set of

detailed rules for counsel's conduct can satisfactorily take account of the variety of

circumstances faced by defense counsel." *Flores-Ortega*, 528 U.S. at 477 (quoting

*Strickland*, 466 U.S. at 688–89).  Accordingly, courts must "judge the reasonableness of

counsel's challenged conduct on the facts of the particular case . . . ." *Id.* (quoting

*Strickland*, 466 U.S. at 690).  Here, the salient contextual detail is a sentence consistent

with the plea agreement and the absence of any colorable issues to appeal.[6]

Pierce's plea agreement expressly waived his right to appeal—"including the right

to appeal any issues that relate to the establishment of the advisory guidelines range . . . .

and the calculation of any term of imprisonment"—unless he received a sentence greater

than 78 months.  (Plea Agreement 7, ECF No. 6.)  "A defendant's waiver of his right to

appeal a . . . sentence is valid and enforceable if such waiver was knowingly and

intelligently made . . . . [and] clearly and unambiguously applicable to the issues raised

by the defendant on appeal." *United States v. Yooho Weon*, 722 F.3d 583, 588 (4th Cir.

2013) (internal citations omitted).  Pierce does not challenge the validity of his

agreement—which was confirmed via a Rule 11 colloquy—and instead seeks review of

the applicability of the enhancement codified at U.S.S.G. § 2B1.1(b)(2)(A)(i), which his

waiver expressly covers. *See, e.g.*, *United States v. Cohen*, 459 F.3d 490, 495–96 (4th

Cir. 2006) (holding that a nearly identical waiver covered an appellate "attack on the

---

[6] The absence of any colorable basis for appeal is probative of the adequacy of counsel's relatively brief consultation, not prejudice under *Strickland*.  Under that prejudice standard—which this court need not, and does not, apply here—"the merits of [Pierce's] underlying claims [are irrelevant] when the violation of the right to counsel" precluded an appeal he otherwise would have taken, merited or not. *Flores-Ortega*, 528 U.S. at 484.

district court's loss calculation for purposes of determining his advisory sentencing guidelines range"); *United States v. Blick*, 408 F.3d 162, 169–70 (holding that waiver of an appeal concerning "any sentence within the maximum provided in the statute of conviction (or the manner in which that sentence was determined)" precluded a challenge to a guidelines calculation).  Pierce himself recognizes the waiver in his motion to vacate. In response to the question whether he raised specific issues on appeal, he replied that he did not because "[t]he plea agreement included an appeal waiver which precluded Movant from filing a direct appeal."  (Mot. 4, ECF No. 51.)

Seen in context, then, counsel's brief discussion is constitutionally adequate; Pierce's lawyer did not perform in a constitutionally deficient manner in consulting Pierce on his prospects on appeal.  The advice was accurate, and Pierce nowhere suggests that he told counsel he wished to appeal despite the waiver to which he had agreed.

### III. Certificate of Appealability

After a district court denies the entirety of a motion under 28 U.S.C. § 2255, a prisoner may only appeal that decision if "a judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(B); *see also* Fed. R. App. P. 22(b)(1).  Accordingly, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing Section 2255 Proceedings in the United States District Courts, Rule 11(a).

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Where, as here, a district court rejects on the merits a prisoner's claims, that standard is met if the prisoner "demonstrate[s] that reasonable jurists would find the district court's assessment of the

12

constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004), or that "the issues presented were adequate to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

None of Pierce's claims satisfy that standard.  As to his Sixth Amendment claims premised on his attorney's failure to challenge the application of U.S.S.G. § 2B1.1(b), long-standing precedent compels the conclusion that his counsel was not constitutionally deficient for failing to assert a position that several courts of appeal have rejected and that the Fourth Circuit has not endorsed.  *See supra* Part I.  As to Pierce's Sixth Amendment claim premised on his attorney's failure to consult him sufficiently on his right to appeal, the circumstances of this case demonstrate that counsel satisfied the constitutional guarantee by informing Pierce that, in light of the plea agreement and the sentence, he had waived his right to appeal.  *See supra* Part II.  For these reasons, no certificate of appealability will issue.

## CONCLUSION

For the reasons stated above, Pierce's motion will be denied and a certificate of appealability will not issue.

A separate order follows.

November 21, 2014                                         /S/
        Date                                        Catherine C. Blake
                                                    United States District Judge

13